UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:15cv126-FDW

| MARTY TARELL GASTON, | ) |  |
|---|---|---|
|  | ) |  |
| Petitioner, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| FRANK L. PERRY,[1] | ) |  |
|  | ) |  |
| Respondent. | ) |  |

**THIS MATTER** is before the Court upon Marty Tarell Gaston's pro se Petition for Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254. (Doc. No. 1.) Also before the Court is Respondent's Motion for Summary Judgment. (Doc. No. 4.)

I.  BACKGROUND

Petitioner is a prisoner of the State of North Carolina, who was convicted of second-degree murder on July 20, 2012, after a jury trial in Mecklenburg County Superior Court. The North Carolina Court of Appeals summarized the evidence presented at trial:

> This case arises from the shooting death of Larry Gaither ("the decedent"), which occurred at the home of the decedent's cousin, Sheree Thomas ("Thomas"), in the early morning hours of 11 October 2008. On the night of 10 October 2008, the decedent gathered with a number of other individuals at Thomas's home to celebrate Thomas's album release. It is undisputed that, in the early morning hours of 11 October 2008, Marty Tarrell Gaston ("Defendant"), Thomas's then-boyfriend, arrived at Thomas's home for the first time. Defendant and the decedent became

---

[1] Consistent with Rule 2(a) of the Rules Governing Section 2254 Cases in the United States District Courts, Frank L. Perry, Secretary of the North Carolina Department of Public Safety has been substituted for "Secretary of the N.C. Department of Corrections" as Respondent in this case. See Rule 2(a), 28 U.S.C. folio § 2254 (requiring a petition for writ of habeas corpus name the person who has immediate custody of the petitioner as the respondent in the action); see also Rumsfeld v. Padilla, 542 U.S. 426, 434–47 (2004) (stating the writ should be directed to the "person who has the immediate custody of the party detained, with the power to produce the body of such party before the court or judge").

1

involved in an argument. During the argument, Defendant shot and killed the decedent. Testimony regarding the events leading up to and encompassing the killing was offered at trial by a number of individuals who attended the party. From varying perspectives, those individuals testified in pertinent part to the following:

> Between 2:30 and 3:00 a.m. on October 11, a Cadillac car arrived at Thomas's house. There were two people in the car. One person, later identified as Defendant, got out and went inside. When Defendant entered the house, he grabbed Thomas by the hair and pulled her up the stairs while she struggled. The decedent became upset and confronted Defendant; they exchanged words. Defendant continued pulling Thomas up the stairs, and the two eventually entered a bedroom and closed the door. After hearing a scream, the decedent entered the bedroom with his cousin and others. Defendant was holding Thomas's gun. There was a gunshot and the decedent fell to the floor. Defendant went down the stairs, out the door, and left Thomas's home.

Defendant's testimony largely corroborates the events described in the preceding paragraph. Defendant admitted to grabbing Thomas's hair, but denied pulling her up the stairs. Defendant testified that, after entering the bedroom with Thomas, he heard the decedent say he was going to kill Defendant and "go to his trunk and get a gun . . . that shoot like a missile." Defendant testified that he "got a little scared," picked up Thomas's gun, and opened the door, intending to leave. When Defendant opened the door, the decedent's cousin entered the room and grabbed him around the waist; they began struggling. During the struggle, Defendant heard footsteps and recognized the decedent. He testified that "[t]he gun went off [at that moment]. One time. I didn't aim the gun." He also testified that he did not know anyone had been shot and did not intend to kill the decedent. He stated that he did not pull the trigger on purpose, and that the gun went off accidentally.

Defendant also offered the testimony of his friend, Reginal Lindsey ("Lindsey"), who drove Defendant to Thomas's home on October 11. Lindsey testified that he entered the house and saw the decedent screaming and saying "[a]in't nobody going to do nothing to my cousin." He heard the decedent say "I got some shit out there in the trunk that shoot like a missile" and watched him go outside. The decedent came back in after about thirty seconds and went up the stairs. There was a gunshot, and Defendant came out of the house and left with Lindsey. As they were driving, Defendant disposed of the gun along the road.

State v. Gaston, 748 S.E.2d 21, 22-23 (N.C. Ct. App. 2013) (footnotes omitted).

At the conclusion of the trial, the court instructed the jury on first-degree murder, second-degree murder, and accident. Id. at 23. Upon his conviction for second-degree murder,

2

Petitioner was sentenced to 240 to 297 months in prison.  Id.

The North Carolina Court of Appeals found "no error" on direct appeal.  Id. at 26.  The North Carolina Supreme Court thereafter denied discretionary review.  State v. Gaston, 749 S.E.2d 863 (N.C. Nov. 7, 2013) (mem).

On September 30, 2014, Petitioner filed a pro se motion for appropriate relief ("MAR") with the Mecklenburg County Superior Court.  (Resp't's Ex. 13, Doc. No. 5-21.)  By order filed November 13, 2014, the state court denied the MAR.  (Resp't's Ex. 14, Doc. No. 5-22.)

On December 11, 2014, Petitioner filed a pro se petition for writ of certiorari ("PWC") with the North Carolina Court of Appeals, seeking review of the denial of his MAR.  (Resp't's Ex. 15, Doc. No. 5-23.)  By order entered December 29, 2014, the court denied the PWC.  (Resp't's Ex. 17, Doc. No. 5-25.)

Petitioner signed his pro se habeas corpus petition ("Petition"), under penalty of perjury, and placed it in the prison mailing system on January 15, 2014.  (Pet. 10, Doc. No. 1.)  It was not file-stamped in this Court until March 17, 2014, however.  (Pet., supra, at 1.)

After conducting an initial review required by Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts, the Court ordered Respondent to answer the Petition.  Respondent thereafter filed a Response (Doc. No. 3), Motion for Summary Judgment (Doc. No. 4), and Memorandum of Support (Doc. No. 5) with exhibits.  Petitioner subsequently filed a Response to the Motion for Summary Judgment.  (Doc. No. 7.)

## II.  STANDARD OF REVIEW

### A. Summary Judgment

Summary judgment is appropriate in those cases where there is no genuine dispute as to any material fact, and it appears that the moving party is entitled to judgment as a matter of law.

3

Fed. R. Civ. P. 56(c)(2); United States v. Lee, 943 F.2d 366, 368 (4th Cir. 1991). Any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986). Where, however, the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, disposition by summary judgment is appropriate. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986).

**B. The Antiterrorism and Effective Death Penalty Act of 1996**

**(1) Exhaustion**

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2244 and §§ 2253-2254. Breard v. Pruett, 134 F.3d 615, 618 (4th Cir. 1998). AEDPA requires that before seeking habeas corpus relief, the petitioner first must exhaust his state court remedies. § 2254(b)(1)(A). To meet the exhaustion requirement, a petitioner must provide the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented through a habeas petition in federal court. O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999). To provide the state this opportunity, the petitioner must "'fairly present' his claim in each appropriate state court . . ., thereby alerting that court to the federal nature of the claim." Baldwin v. Reese, 541 U.S. 27, 29 (2004). "Fair presentation" requires a petitioner to provide the state courts "both the operative facts and the controlling legal principles" associated with the claim. Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000) (citation omitted).

**(2) Procedural Default**

"A distinct but related limit on the scope of federal habeas review is the doctrine of procedural default." Breard, 134 F.3d at 619. One way in which procedural default occurs is

4

when "a habeas petitioner fails to exhaust available state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred." Id. (internal quotation marks omitted). Procedural default also occurs "[i]f a state court clearly and expressly bases its dismissal of a habeas petitioner's claim on a state procedural rule, and that procedural rule provides an independent and adequate ground for the dismissal." Id. (citing Coleman v. Thompson, 501 U.S. 722, 731-32 (1991)).

A federal habeas court will not review a claim that is procedurally defaulted absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim. See Wright v. Angelone, 151 F.3d 151, 160 (4th Cir. 1998). To show cause, a petitioner must show "that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule," Murray v. Carrier, 477 U.S. 478, 488 (1986), or that "the factual or legal basis for the claim was not reasonably available to the claimant at the time of the state proceeding," Roach v. Angelone, 176 F.3d 210, 222 (4th Cir. 1999). "Alternatively, [a p]etitioner may prove that failure to consider the claims will result in a fundamental miscarriage of justice." McCarver v. Lee, 221 F.3d 583, 588 (4th Cir. 2000) (citing Coleman, 501 U.S. at 750). A fundamental miscarriage of justice equates to the conviction of someone who is actually innocent. "Actual innocence," however, requires "factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623 (1998).

## III.    DISCUSSION

### A.  Jury Instruction Claim[2]

Petitioner claims that the trial court violated his right to due process under the Fifth and Fourteenth Amendments to the United States Constitution when it denied his request to instruct the jury on voluntary manslaughter and self-defense. (Pet., supra, at 15-17.) Respondent contends that this claim is procedurally defaulted on federal habeas review because Petitioner challenged the denial of the jury instructions in the state courts solely on state law grounds. (Mem. in Support of Summ. J. Mot. 17, Doc. No. 5.)

Having reviewed and considered the state court record, it is apparent that Petitioner failed to fairly present his federal due process claim in the state courts. Although he argued on direct appeal that "the trial court erred in denying his request for jury instructions on self–defense and voluntary manslaughter," Gaston, 748 S.E.2d at 24, Petitioner did not properly present his claim as one arising under federal law.

The Supreme Court has held that in capital cases, due process requires the court to give an instruction on a lesser-included-offense "if the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." Beck v. Alabama, 447 U.S. 625, 635 (1980).[3] Although both the U.S. Supreme Court and the North Carolina Supreme Court have declined to decide whether the Due Process Clause similarly requires instructions on lesser-included offenses in non-capital cases, see State v. Collins, 431 S.E.2d 188, 190 (N.C. 1993) (citing Beck, 447 U.S. at 638 n.14), the state appellate courts have cited Beck and/or

---

[2] Petitioner raised this as Ground Three in his Petition.
[3] The State did not indict Petitioner for first-degree capital murder.

federal due process in both capital and non-capital cases.[4]  North Carolina's rule on lesser-included-offense instructions, on the other hand, applies in both capital and noncapital cases. See N.C. Gen. Stat. § 15-170 (2015) ("Upon the trial of any indictment the prisoner may be convicted of the crime charged therein or of a less degree of the same crime, or of an attempt to commit the crime so charged, or of an attempt to commit a less degree of the same crime.")

Neither the Defendant-Appellant's Amended Brief (Resp't's Ex. 7, Doc. No. 5-15), nor the Defendant-Appellant's Reply Brief (Resp't's Ex. 9, Doc. No. 5-17), refer to due process, the federal constitution, or federal case law.  Moreover, appellate counsel did not cite any of the state cases that refer to Beck or federal due process.  Thus, Petitioner failed to alert the state appellate courts to the federal nature of his claim.  See e.g., Reese, 541 U.S. at 32 ("A [state prisoner] wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . . by citing . . . the federal source of law on which he relies or a case deciding such a claim on federal grounds[.]").

Additionally, the North Carolina Court of Appeals decided the issue solely on state law grounds.  Gaston, 748 S.E.2d at 24-26.  Nowhere does the opinion refer to due process, the

---

[4] North Carolina has a line of lesser-included-offense cases that refer to due process and cite Beck.  See State v. Laurean, 724 S.E.2d 657 (N.C. Ct. App. 2012); State v. Wiggins, 707 S.E.2d 664 (N.C. Ct. App. 2011); State v. Robison, 708 S.E.2d 215 (N.C. Ct. App. 2009) (unpublished); State v. Locklear, 681 S.E.2d 293 (N.C. 2009); State v. Thomas, 676 S.E.2d 56 (N.C. Ct. App. 2009); State v. Dyson, 648 599 S.E.2d 73 (N.C. Ct. App. 2004); State v. Beck; 594 S.E.2d 94 (N.C. 2004); State v. Mays, 582 S.E.2d 360 (N.C. 2003); State v. Doswell. 571 S.E.2d 86 (N.C. Ct. App. 2002) (unpublished); State v. Millsaps, 572 S.E.2d 767 (N.C. 2002); State v. Leazer, 539 S.E.2d 922 (N.C. 2000); State v. Broome, 523 S.E.2d 448 (N.C. Ct. App. 1999); State v. Larry, S.E.2d 907 (N.C. 1997); State v. Price, 476 S.E.2d 317 (N.C. 1996); State v. Williams, 471 S.E.2d 379 (N.C. 1996); State v. Wilder, 476 S.E.2d 394 (N.C. 1996); State v. Andrews, 274 468 S.E.2d 597 (N.C. Ct. App. 1996); State v. Walls, 463 S.E.2d 738 (N.C. 1995); State v. Conaway, 453 S.E.2d 824 (N.C. 1995); State v. Jones, 451 S.E.2d 826 (N.C. 1994); State v. Rose, 451 S.E.2d 211 (N.C. 1994); State v. Camacho, 446 S.E.2d 8 (N.C. 1994); State v. Skipper, 446 S.E.2d 252 (1994), superseded on other grounds by statute, N.C.G.S. § 15A-2002; State v. Collins, 431 S.E.2d 188 (N.C. 1993); State v. Phipps, 418 S.E.2d 178 (N.C. 1992); State v. Arnold, 404 S.E.2d 822 (N.C. 1991); State v. Thomas, 386 S.E.2d 555 (N.C. 1989); State v. Zuniga, 357 S.E.2d 898 (N.C. 1987); State v. Fisher, 350 S.E.2d 334 (N.C. 1986); State v. Johnson, 347 S.E.2d 7 (N.C. 1986); State v. Strickland, 298 S.E.2d 645, 654 (N.C. 1983), overruled in part on other grounds by State v. Johnson, 344 S.E.2d 775 (N.C. 1986).

7

federal constitution, or federal case law. Id. Furthermore, State v. Debiase, which the appellate court cited as authority for North Carolina's rule on lesser-included offense instructions, see Gaston, 748 S.E.2d at 24, does not cite the due process clause or any state or federal case directly construing it. 711 S.E.2d 436, 441 (N.C. Ct. App. 2011).

The Court finds that Petitioner failed to provide the state courts a full and fair opportunity to resolve his federal due process claim. As such, the claim is unexhausted, see O'Sullivan, 526 U.S. at 845, and procedurally defaulted here,[5] absent a showing of cause and prejudice to excuse the default, or that a fundamental miscarriage of justice will occur if the habeas court declines to review the claim, see Wright, 151 F.3d at 160. While ineffective assistance of appellate counsel may serve as "cause" to excuse a procedural default, "the exhaustion doctrine . . . generally requires that a claim of ineffective assistance be presented to the state courts as an independent claim before it may be used to establish cause for a procedural default." Murray v. Carrier, 477 U.S. 478, 488-89 (1986). Petitioner did not raise an independent claim of ineffective assistance of appellate counsel in the state courts. Moreover, he does not assert "cause and prejudice" on any grounds, and he cannot show that a fundamental miscarriage of justice will occur if the court refuses to consider his claim, see Bousley, 523 U.S. at 623.

Therefore, Petitioner's claim is procedurally defaulted, and the Court will not review it on the merits. Summary judgment shall be granted to Respondent.

**B. Ineffective Assistance of Counsel and Due Process Claims**

Petitioner claims that he was denied his right to the effective assistance of counsel when

---

[5] This claim is procedurally defaulted because the state court to which Petitioner would be required to present the claim in order to meet the exhaustion requirement would now find it procedurally barred, see Breard, 134 F.3d at 619, pursuant to N.C. Gen. Stat. § 15A–1419(a)(3). See discussion in section "III B. Ineffective Assistance of Counsel and Due Process Claims," infra, at 9-10.

8

trial counsel failed to introduce evidence (i.e. criminal records) of the victim's propensity for violence. (Pet. 11-14, Doc. No. 1.) Petitioner also claims that he was denied his right to due process when trial counsel failed to introduce evidence at trial of the victim's propensity for violence. (Pet., supra, at 15.) The alleged due process violation – denial of jury instructions on self-defense and voluntary manslaughter – is premised solely on the alleged ineffectiveness of trial counsel. (Pet., supra, at 11-15.) Therefore, the Court will treat Petitioner's "due process" claim as subsumed by his Sixth Amendment claim. See generally Strickland v. Washington, 466 U.S. 668, 684-85 (1984) ("The Constitution guarantees a fair trial through the Due Process Clauses, but it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment.").

Respondent contends that Petitioner's claims are procedurally defaulted. Petitioner raised both claims in his MAR. (Resp't's Ex. 13, Doc. No. 5-21.) Fairly read, the state court's summary denial of the MAR was an adjudication on the merits and, in the alternative, application of a procedural bar. (Order Den. MAR, Resp't's Ex. 14, Doc. No. 5-22) (holding that the MAR "fail[ed] to state a claim upon which relief may be granted" and was "without merit under N.C. Gen. Stat. § 15A-1419(a)(3)").

Under North Carolina law, claims raised in an MAR that could have been raised on direct appeal, but were not, are subject to dismissal. N.C. Gen. Stat. § 15A–1419(a)(3). The Fourth Circuit has held that § 15A–1419 (a)(3) is an independent and adequate state procedural rule. See Lawrence v. Branker, 517 F.3d 700, 714 (4th Cir. 2008) ("We have consistently held that § 15A–1419(a)(3) is an independent and adequate state ground for purposes of procedural default."); McCarver, 221 F.3d at 588. Thus, the state court's citation of § 15A-1419(a)(3) constitutes an express reliance upon an adequate and independent state procedural rule as a basis

9

for dismissing Petitioner's MAR.

By relying on § 15A-1419(a)(3), the state court necessarily found that Petitioner could have raised his ineffective assistance of trial counsel claims on direct appeal. See State v. Fair, 557 S.E.2d 500, 525 (N.C. 2001) ("[Section 15A-1419(a)(3)] requires North Carolina courts to determine whether the particular claim at issue could have been brought on direct review.") (citing McCarver, 221 F.3d at 589). Factual findings made by the state court are presumed to be correct absent clear and convincing evidence to the contrary. § 2254(e)(1). Thus, the first question that must be addressed is whether there is clear and convincing evidence that Petitioner could not have raised his ineffectiveness claim on direct review.

In Strickland v. Washington, the Supreme Court identified two necessary components of an ineffective assistance claim. 466 U.S. at 687. First, "the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, "the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id.

When assessing counsel's performance, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" Id. at 689. To establish prejudice, a defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.

In North Carolina, "[ineffective assistance of counsel] claims brought on direct review will be decided on the merits when the cold record reveals that no further investigation is required." Fair, 557 S.E.2d at 524. Petitioner may be correct that the cold record would not have supported a ruling on the deficiency prong of Strickland (Pet., supra, at 13), because neither the victim's criminal records nor trial counsel's strategy with respect to those criminal records appear in the trial record or record on appeal. However, the North Carolina appellate courts will dispose of ineffectiveness claims when the cold record reveals that a defendant cannot demonstrate prejudice under Strickland, notwithstanding the alleged deficiency by counsel. See e.g., State v. Braswell, 324 S.E.2d 241, 249 (N.C. 1985) ("[I]f a reviewing court can determine at the outset that there is no reasonable probability that in the absence of counsel's alleged errors the result of the proceeding would have been different, then the court need not determine whether counsel's performance was actually deficient."); see also State v. Tinney, 748 S.E.2d 730, 738 (N.C. Ct. App. 2013) ("[G]iven our determination that information contained in the existing record demonstrates that Defendant cannot make the necessary showing of prejudice, we have no difficulty in deciding that the cold record reveals that no further investigation is required and that Defendant's claim can be developed and argued without such ancillary procedures as the appointment of investigators or an evidentiary hearing.") (internal quotation marks and citation omitted).

At Petitioner's charge conference, defense counsel requested instructions on voluntary manslaughter and self-defense, which the trial court denied. See Gaston, 748 S.E.2d at 23-24. As discussed supra, Petitioner challenged the trial court's decision on direct appeal, and the appellate court found no error. See id. at 27.

During discovery, the defense received evidence of the victim's prior arrests for

11

communicating threats and possession of a concealed firearm. (MAR 2, Doc. No. 5-21.) Additionally, attached to Petitioner's MAR is an affidavit of Sheree Thomas stating that two weeks prior to the shooting, she told Petitioner that the victim, Larry Gaither was looking for a gun "for Marty Gaston," and that on the night of the party, she identified Gaither to Petitioner. (Thomas Aff., MAR, supra, at 12.) Petitioner contends that this evidence was admissible to show the victim's propensity for violence and that Petitioner had formed a reasonable belief that it was necessary to pick up the gun to protect himself. Petitioner argues that had counsel introduced this evidence, the trial court would have instructed the jury on imperfect self-defense and voluntary manslaughter, leading to a reasonable probability that he would have been convicted of voluntary manslaughter rather than second-degree murder.

"Beck held that [in capital cases] due process requires that a lesser included offense instruction be given when the evidence warrants such an instruction." Hopper v. Evans, 456 U.S. 605, 611 (1982). As noted in the previous section, the Supreme Court has not recognized a federal constitutional right to a lesser-included offense instruction in noncapital cases. See Beck, 447 U.S. at 638 n.14 (deliberately declining to consider whether the Constitution requires a lesser-included offense instruction in a non-death penalty context); see also Robinson v. North Carolina Atty. Gen., 238 F.3d 414 (4th Cir. 2000) (unpublished table decision) (citing Beck and holding that petitioner in non-capital case was not entitled to federal habeas relief based on claim that North Carolina trial court denied him federal due process by refusing to give lesser-included offense instruction). Because Petitioner cannot demonstrate that there is a federal due process right to a lesser-included offense instruction in a noncapital case, he likewise cannot demonstrate that but-for counsel's alleged deficiencies, due process would have required that Petitioner receive an instruction on self-defense and voluntary manslaughter. See Strickland, 466 U.S. at

12

694.

The rule in North Carolina, on the other hand, applies in capital and non-capital cases and requires that a lesser-included offense instruction be given if "there is evidence from which the jury could reasonably conclude that the defendant committed the lesser [-] included offense." Gaston, 748 S.E.2d at 24 (quoting Debiase, 711 S.E.2d at 441). Under North Carolina law, voluntary manslaughter is "an intentional killing without malice committed in the heat of passion or through imperfect self-defense resulting in [sic] excessive force." Gaston, 748 S.E.2d at 24 (citation omitted; alteration in original). Whether an instruction on imperfect self-defense and, thus, voluntary manslaughter is necessary under state law requires an affirmative answer to two questions:

> Is there evidence that the defendant in fact *formed a belief* that it was necessary to kill his adversary in order to protect himself from death or great bodily harm, and if so, was that belief reasonable? If both queries are answered in the affirmative, then an instruction on self-defense must be given. If, however, the evidence requires a negative response to either question, a self-defense instruction should not be given.

Id.[6] (citation omitted; emphasis in original).

Thus, if a defendant testifies that he did not intend to harm the victim, he is not entitled to an instruction on self-defense. See Gaston, 748 S.E.2d at 26 (citing State v. Nicholson, 558 S.E.2d 109 (2002); State v. Williams, 467 S.E.2d 392 (N.C. 1996); State v. Lyons, 459 S.E.2d 770 (N.C. 1995); State v. Reid, 440 S.E.2d 776 (N.C. 1994); State v. Blankenship, 357 S.E.2d 357 (N.C. 1987); State v. Mize, 340 S.E.2d 439, (N.C. 1986); State v. Wallace, 305 S.E.2d 548 (N.C. 1983); State v. Bush, 297 S.E.2d 563 (N.C. 1982)). This rule does not appear to offend

---

[6] There was no assertion at trial or on appeal that Petitioner killed the victim in the heat of passion. See Gaston, 748 S.E.2d at 24.

13

federal constitutional law. See Hopper, 456 U.S. at 613.

In Hopper v. Evans, the Supreme Court considered whether a new trial was required in a capital case in which the defendant's own evidence negated the possibility that a lesser-included offense instruction might have been warranted. Id. at 606. The defendant, who, before both the grand jury and his trial jury, "made it crystal clear that he had killed the victim, that he intended to kill him, and that he would do the same thing again in similar circumstances," nevertheless claimed in habeas that his conviction and sentence were unconstitutional pursuant to Beck because the jury was not instructed on the lesser-included non-capital offense of unintentional homicide. Id. at 612. The Supreme Court held that because there was no evidence to support a lesser included offense instruction, the fact that one was not given was not error. Id. at 613. The Court stated that,

> [i]t would be an extraordinary perversion of the law to say that intent to kill is not established when a felon, engaged in an armed robbery, admits to shooting his victim in the back in the circumstances shown here. The evidence not only supported the claim that respondent intended to kill the victim, but affirmatively negated any claim that he did not intend to kill the victim.

Id.

The North Carolina appellate court found that Petitioner's testimony that he did not intend to kill the victim, did not aim the gun, did not intentionally pull the trigger and that the gun went off accidentally negated any claim that Petitioner had formed a belief that it was necessary to kill the victim in order to protect himself from death or great bodily harm. Gaston, 748 S.E.2d at 26-27. No amount of evidence that Petitioner knew of the victim's propensity for violence would have altered his own testimony that he did not intentionally shoot the victim. Therefore, the court on direct appeal could have determined that a decision on Strickland's deficiency prong was not necessary because there was no reasonable probability that Petitioner

14

would have received instructions on self-defense and voluntary manslaughter, thereby precluding any reasonable probability that Petitioner would have been convicted of voluntary manslaughter. See Fair, 557 S.E.2d at 524.

Petitioner has failed to demonstrate by clear and convincing evidence that he was not in an adequate position to raise his ineffectiveness claim on direct appeal. See § 2254(e)(1). Additionally, he has not shown "cause and prejudice" to excuse his failure to raise this claim on direct appeal.[7] See Wright, 151 F.3d at 160. Nor can he demonstrate that a fundamental miscarriage of justice will occur if the court refuses to consider his ineffectiveness claim. See Bousley, 523 U.S. at 623. It is, therefore, procedurally defaulted.

## IV.  CONCLUSION

The claims raised in the instant Petition are procedurally defaulted. As such, the Petition shall be dismissed and summary judgment granted to Respondent.

## V.  ORDER

**IT IS, THEREFORE, ORDERED** that:

1) Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DISMISSED**;

2) Respondent's Motion for Summary Judgment (Doc. No. 4) is **GRANTED**; and

3) Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing

---

[7] Because Petitioner was in a position to raise his ineffective assistance of trial counsel claim on direct appeal, Martinez v. Ryan, 132 S. Ct. 1309 (2012) and Trevino v. Thaler, 133 S.Ct. 1911 (2013) do not provide Petitioner a way to overcome his procedural default. See Fowler v. Joyner, 753 F.3d 446, 463 (4th Cir. 2014), cert. denied, 135 S.Ct. 1530, 83 USLW 3717 (March 9, 2015) (Mem).

of a denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); Slack v. McDaniel, 529 U.S. 474, 484 (2000) (holding that when relief is denied on procedural grounds, a petitioner must establish both that the correctness of the dispositive procedural ruling is debatable, and that the petition states a debatably valid claim of the denial of a constitutional right).

**SO ORDERED.**

Signed: November 16,

Frank D. Whitney
Chief United States District Judge